IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | | |
|---|---|---|
| Jerry J. Wells, | ) | C/A No. 3:08-3634-JFA-PJG |
| Plaintiff, | ) | |
| vs. | ) | **REPORT AND RECOMMENDATION** |
| Briggs Construction Equipment Inc., | ) | |
| Defendant. | ) | |

The plaintiff, Jerry J. Wells ("Wells"), filed this employment discrimination action pursuant to the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621-634, and the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101 et seq., against the defendant, Briggs Construction Equipment Inc. ("Briggs"). Wells asserts claims of age discrimination, disability discrimination, and retaliation. This matter is before the court pursuant to 28 U.S.C. § 636(b) and Local Civil Rule 73.02(B)(2) DSC for a Report and Recommendation on Briggs's motion for summary judgment. (Docket Entry 20.) Wells filed a response in opposition (Docket Entry 28) and Briggs filed a reply (Docket Entry 33). Having carefully considered the parties' submissions and the record in this case, the court finds that the defendant's motion should be granted.

**BACKGROUND**

The following undisputed facts are relevant to the resolution of Briggs's motion. Wells is a former employee of Briggs, which sells and rents heavy construction equipment. George Cobb ("Cobb"), then age fifty-eight and the manager of Briggs's Columbia area office, hired Wells in 2005 as a rental representative for the Columbia area. Wells was then sixty years of age. As a rental representative, Wells's job duties included calling on customers, promoting the company, and

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | | |
|---|---|---|
| Jerry J. Wells, | ) | C/A No. 3:08-3634-JFA-PJG |
| Plaintiff, | ) | |
| vs. | ) | **REPORT AND RECOMMENDATION** |
| Briggs Construction Equipment Inc., | ) | |
| Defendant. | ) | |

The plaintiff, Jerry J. Wells ("Wells"), filed this employment discrimination action pursuant to the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621-634, and the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101 et seq., against the defendant, Briggs Construction Equipment Inc. ("Briggs"). Wells asserts claims of age discrimination, disability discrimination, and retaliation. This matter is before the court pursuant to 28 U.S.C. § 636(b) and Local Civil Rule 73.02(B)(2) DSC for a Report and Recommendation on Briggs's motion for summary judgment. (Docket Entry 20.) Wells filed a response in opposition (Docket Entry 28) and Briggs filed a reply (Docket Entry 33). Having carefully considered the parties' submissions and the record in this case, the court finds that the defendant's motion should be granted.

**BACKGROUND**

The following undisputed facts are relevant to the resolution of Briggs's motion. Wells is a former employee of Briggs, which sells and rents heavy construction equipment. George Cobb ("Cobb"), then age fifty-eight and the manager of Briggs's Columbia area office, hired Wells in 2005 as a rental representative for the Columbia area. Wells was then sixty years of age. As a rental representative, Wells's job duties included calling on customers, promoting the company, and

developing rental business. Wells reported to Cobb and Briggs's rental manager, Edward "Ned" Boykin, who at the relevant time was in his mid to late twenties. The next year, Briggs hired another rental representative to work in the Columbia territory with Wells. Lucas Shupe, age twenty-five, shared the territory with Wells until Briggs terminated Shupe in 2007 for failing to "meet his budget"—i.e., to generate sufficient monthly revenue. The parties appear to agree that around the time of Shupe's termination, the downturn in the national economy was negatively affecting the construction industry. After Shupe's termination, Wells again handled the Columbia territory alone.

Also during this time frame, Wells began experiencing knee problems. Ultimately, his physician recommended knee replacement surgery, and on August 28, 2007, Wells informed Cobb and Boykin that he would be out of work for the surgery in November or December of 2007, when business was typically slower. Approximately a week later, Cobb provided Wells with a memorandum outlining how his vacation days, sick days, and short-term disability could be used while he was out of work. On October 29, 2007, Wells informed Cobb and Boykin that the surgery was scheduled for November 27, 2007.

According to Wells, his supervisors' attitudes toward him changed after he informed them that he needed knee surgery. On October 1, 2007 Cobb placed Wells on a ninety-day Performance Improvement Plan ("PIP"). The proffered reason for this was that Wells had not made budget for several months in a row. The PIP required Wells to make at least forty sales calls each week and generate $100,000 per month in revenue. Additionally, he was to obtain Boykin's approval for any change in price rather than negotiating prices with customers himself. Wells informed Cobb and Boykin that the worsening economy was preventing him from meeting his revenue requirements. Over the next few weeks, Wells did not meet the requirements of the PIP. On November 2, 2007, Wells was terminated for inadequate job performance. The parties dispute whether the decision to

terminate Wells was actually made by Cobb or by the regional director for Briggs's South Carolina offices, Max Wysong, who was then approximately sixty years of age. Following Wells's termination, his job duties were performed by Boykin, the manger of the Columbia territory. Boykin himself was terminated as part of a reduction in force approximately a year later.

## DISCUSSION

A.  **Summary Judgment Standard**

Summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported Motion for Summary Judgment; the requirement is that there be no *genuine* issue of *material fact*." Ballinger v. N.C. Agric. Extension Serv., 815 F.2d 1001, 1005 (4th Cir. 1987). A fact is "material" if proof of its existence or non-existence would affect the disposition of the case under the applicable law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. Id. at 257.

In discrimination cases, a party is entitled to summary judgment if no reasonable jury could rule in the non-moving party's favor. Dennis v. Columbia Colleton Med. Ctr., Inc., 290 F.3d 639, 645 (4th Cir. 2002). The court cannot make credibility determinations or weigh the evidence, but the court should examine uncontradicted and unimpeached evidence offered by the moving party. Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000). The court must determine whether a party's offered evidence is legally sufficient to support a finding of discrimination and look at the strength of a party's case on its own terms. The Reeves Court stated:

> Certainly there will be instances where, although the plaintiff has established a prima facie case and set forth sufficient evidence to reject the defendant's explanation, no rational fact-finder could conclude that the action was discriminatory. For instance, an employer would be entitled to judgment as a matter of law if the record conclusively revealed some other, nondiscriminatory reason for the employer's decision, or if the plaintiff created only a weak issue of fact as to whether the employer's reason was untrue and there was abundant and uncontroverted independent evidence that no discrimination had occurred.

Reeves, 530 U.S. at 148. The Court of Appeals for the Fourth Circuit has stated that the Reeves Court instructs more broadly regarding the factors "on which the appropriateness of a judgment as a matter of law will depend in any case and will include 'the strength of the plaintiff's prima facie case, the probative value of the proof that the employer's explanation is false, and any other evidence that supports the employers' case and that properly may be considered on a motion for judgment as a matter of law.' " Dennis, 290 F.3d at 649 (quoting Reeves, 530 U.S. at 148-49).

**B.      Burden Shifting in Employment Cases**

The parties agree that the McDonnell Douglas burden-shifting framework should be applied in this matter.[1] A plaintiff may demonstrate discrimination or retaliation through direct or circumstantial evidence. When direct evidence is lacking, as in this case, a plaintiff may produce circumstantial evidence and proceed under the McDonnell Douglas burden-shifting framework. Warch v. Ohio Casualty Ins. Co., 435 F.3d 510, 520 (4th Cir. 2006); see also McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973). Pursuant to this framework, once the plaintiff establishes

---

[1] The court observes that the United States Supreme Court has expressly not addressed whether the McDonnell Douglas framework applies to an ADEA claim. Gross v. FBL Financial Services, Inc., 129 S. Ct. 2343, 2349 n.2 (2009). Nonetheless, the United States Court of Appeals for the Fourth Circuit has continued to apply it in that context, and, as noted above, the parties agree that it applies. See Warch v. Ohio Cas. Ins. Co., 435 F.3d 510, 513 (4th Cir. 2006) (cited in Jyachosky v. Winter, 343 Fed. Appx. 871, 876 (4th Cir. Sept. 14, 2009) (*per curiam*) (unpublished)); Mereish v. Walker, 359 F.3d 330, 334 (4th Cir. 2004) (cited in Jones v. Sternheimer Bros., Inc., No. 09-2375, 2010 WL 1650035 (4th Cir. Apr. 22, 2010) (*per curiam*) (unpublished)); (see also Def.'s Mem. in Supp. Summ. J. at 8, Docket Entry 20; Pl.'s Mem. in Opp'n Summ. J. at 5, Docket Entry 28).

a *prima facie* case of discrimination or retaliation, the burden shifts to the defendant to produce evidence of a legitimate, nondiscriminatory reason for the adverse action. Merritt v. Old Dominion Freight, 601 F.3d 289, 294 (4th Cir. 2010) (Title VII). The defendant's burden "is a burden of production, not persuasion." Reeves, 530 U.S. at 142. Once a defendant meets this burden by producing affidavits or testimony demonstrating a legitimate, nondiscriminatory reason, " 'the McDonnell Douglas frame-work—with its presumptions and burdens—disappear[s], and the sole remaining issue [is] discrimination *vel non*.' " Id.

In other words, if the defendant meets the burden to demonstrate a legitimate, nondiscriminatory reason, the plaintiff must demonstrate by a preponderance of the evidence that the proffered reason was " 'not its true reason[], but [was] a pretext for discrimination.' " Merritt, 601 F.3d at 294 (quoting Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 253 (1981)). Accordingly, the plaintiff's burden of demonstrating pretext " 'merges with the ultimate burden of persuading the court that [the plaintiff] has been the victim of intentional discrimination.' " Merritt, 601 F.3d at 294 (quoting Burdine, 450 U.S. at 256) (alterations in original); see also Diamond v. Colonial Life & Accident Ins. Co., 416 F.3d 310, 319 (4th Cir. 2005). To meet this "merged" burden, the employee may prove by a preponderance of the evidence that the decision maker's affidavit is untrue or that the employer's proffered explanation is unworthy of credence. Burdine, 450 U.S. at 256.

"[A] plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, *may* permit the trier of fact to conclude that the employer unlawfully discriminated." Reeves, 530 U.S. at 148. However, "if the record conclusively reveal[s] some other, nondiscriminatory reason for the employer's decision, or if the plaintiff create[s] only a weak issue of fact as to whether the employer's reason was untrue and there was abundant and

uncontroverted independent evidence that no discrimination had occurred," summary judgment is appropriate. Id. Accordingly, the court must evaluate "the strength of the plaintiff's prima facie case, the probative value of the proof that the employer's explanation is false, and any other evidence that supports the employer's case and that properly may be considered on a motion for judgment as a matter of law." Id. at 148-49. "Notwithstanding the intricacies of proof schemes, the core of every [discrimination] case remains the same, necessitating resolution of the ultimate question of . . . whether the plaintiff was the victim of intentional discrimination." Merritt, 301 F.3d at 294-95.

C.      Age Discrimination Claim

   1.      *Prima Facie* Case

To obtain relief based upon alleged age discrimination under the ADEA, a plaintiff must demonstrate that: (1) he is a member of a protected class; (2) he suffered an adverse employment action; (3) at the time of the adverse employment action, he was performing his job at the level that met the employer's legitimate expectations; and (4) he was discharged under circumstances that raise a reasonable inference of unlawful discrimination.[2] See O'Connor v. Consol. Coin Caterers Corp., 517 U.S. 308, 310-12 (1996) (discussing the *prima facie* case under the ADEA); see also Warch v. Ohio Cas. Ins. Co., 435 F.3d 510 (4th Cir. 2006). Only the third and fourth elements are at issue in this case.

With regard to the third element, Briggs contends that Wells was not meeting its legitimate expectations at the time of his termination due to his failure to meet his budget for four consecutive

---

[2] The defendant asserts that the fourth element requires that the plaintiff demonstrate that following his discharge, he was replaced by a substantially younger individual with comparable qualifications. (Def.'s Mem. in Supp. Summ. J. at 9, Docket Entry 20) (citing Warch v. Ohio Cas. Ins. Co., 435 F.3d 510, 513 (4th Cir. 2006)). However, as discussed below, Supreme Court and Fourth Circuit precedent reveals that this is not the sole manner in which to satisfy the fourth prong of a *prima facie* case of age discrimination.

PJG

months. In turn, Wells argues that Briggs's expectations regarding his revenue requirements were not legitimate, as they were unreasonable and unattainable in light of the state of the economy.

The relevant time to evaluate the an employee's performance is at the time of the adverse action. See, e.g, Miles v. Dell, Inc., 429 F.3d 480, 485 (4th Cir. 2005) (Title VII) (stating that the third factor of a *prima facie* case includes that "she was performing her job duties at a level that met her employer's legitimate expectations at the time of the adverse employment action"). Moreover, in determining satisfactory job performance, it is the perception of the decision maker which is relevant, not the self-assessment of the plaintiff. King v. Rumsfeld, 328 F.3d 145, 149 (4th Cir. 2003) (Title VII) (stating that plaintiff's own testimony of satisfactory job performance cannot establish a genuine issue as to whether he was meeting his employer's expectations in a race discrimination case) (citing Evans v. Technologies Applications & Serv. Co., 80 F.3d 954, 960-61 (4th Cir. 1996)). An employer's expectations of its employees are "legitimate" when they are honestly held; whether the employee agrees with those expectations is not the test. Thornley v. Penton Pub., Inc., 104 F.3d 26, 30 (2d Cir. 1997) (stating that "a plaintiff must satisfy the employer's honestly-held expectations"). In this context, the term "legitimate" means that expectations cannot be a "sham designed to hide the employer's discriminatory purpose." Warch, 435 F.3d at 518. As long as the requirements imposed are bona fide expectations, it is not the court's province to determine whether an employer demands too much of its workers. Coco v. Elmwood Care, Inc., 128 F.3d 1177, 1179 (7th Cir. 1997) (Posner, J.).

Wells has presented no evidence from which a reasonable jury could find that Briggs's expectations regarding incoming revenue were a sham. Indeed, Briggs imposed those same expectations on the substantially younger Shupe, and terminated him when he failed to meet them. Boykin, also in his twenties, was ultimately discharged as well. Although Wells's evidence may help

establish that no employee could have met Briggs's expectations during this time period, he cannot establish that the expectations were not genuinely held. As Wells does not dispute that he failed to generate the required amount of revenue and failed to make the forty sales calls per week required of him by Briggs, he cannot meet the third element of the *prima facie* case.

As an alternative ground for summary judgment, Briggs contends that Wells also cannot satisfy the fourth element of the *prima facie* case. Supreme Court and Fourth Circuit precedents analyzing the ADEA and Title VII show that an inference of unlawful discrimination may be demonstrated in a variety of ways. For example, the position may be filled with someone outside the protected class. O'Connor, 517 U.S. at 310-12; Hill v. Lockheed Martin Logistics Mgmt., 354 F.3d 277, 285 (4th Cir. 2004) (*en banc*). However, it is not necessary that the replacement be from outside the protected class, as the plaintiff may also show, in an age discrimination case, that he or she was replaced with someone substantially younger, even if within the protected class. O'Connor, 517 U.S. at 310-12; see also Brown v. McLean, 159 F.3d 898, 905 (4th Cir. 1998). Further, the Fourth Circuit has held that the hiring of an applicant within the same protected class does not negate an inference of discrimination when a significant lapse of time occurs between the failure to hire the plaintiff and the decision to hire the other person. Brown, 159 F.3d at 905. Moreover, where a plaintiff shows that "the employer's hiring of another person within the protected class is calculated to disguise its act of discrimination," an inference of discrimination may be drawn. Id.; Miles v. Dell, Inc., 429 F.3d 480, 488-89 (4th Cir. 2005). These examples are not an exhaustive list of circumstances from which a inference of discrimination may be drawn. Miles, 429 F.3d at 487.

Here, the parties do not dispute that Wells's job duties were absorbed by Boykin, who at the approximate age of twenty-seven was outside the class protected by the ADEA. Accordingly, the court finds that Wells has met the fourth element of the *prima facie* case of age discrimination. See

*PJG*

O'Connor, 517 U.S. at 310-12; Hill, 354 F.3d at 285. Since he must meet all of the required elements, however, Briggs is nonetheless entitled to summary judgment based upon Wells's failure to demonstrate that he was meeting Briggs's legitimate expectations at the time of his termination.

**2. Pretext**

Similarly, even if Wells could establish all four elements of the *prima facie* case for age discrimination, he cannot show that Briggs's stated reason for terminating him was false or that age discrimination was the true reason. See Burdine, 450 U.S. at 256. As stated above, Wells challenges Briggs's stated reason for terminating him on the ground that the goals of the PIP were unrealistic. However, it is the decision maker's perception and reasonable belief that matters. See King, 328 F.3d at 149. Accordingly, to show pretext, Wells must show that the decision maker could not have reasonably believed that the stated reason was legitimate. See id. For the reasons discussed above, Wells has failed to do so.

Additionally, case law is clear that where the alleged discriminator and the plaintiff are members of the same protected class, there is an inference that no unlawful discrimination occurred. See, e.g., Elrod v. Sears, Roebuck and Co., 939 F.2d 1466, 1471 (11th Cir. 1991) (ADEA) (stating that it is difficult for a plaintiff to establish discrimination when the allegedly discriminatory decision makers are within the same protected class as the plaintiff); see also Coggins v. Gov't of District of Columbia, 173 F.3d 424, 1999 WL 94655 at *4 (4th Cir. 1999) (Table) ("The fact that both Krull and Gibbons, first and third in [Plaintiff's] chain-of-command, are both Caucasian makes any anti-Caucasian bias unlikely."). Here, although the parties dispute whether Cobb or Wysong actually made the decision to terminate Wells, both are roughly the same age as Wells. Moreover, even if the decision maker was Cobb, as Wells contends, Cobb was the person who originally hired Wells and was well aware of Wells's age. See Proud v. Stone, 945 F.2d 796, 798 (4th Cir. 1991) (ADEA)

("[E]mployers who knowingly hire workers within a protected group seldom will be credible targets for charges of pretextual firing."). Viewing the record as a whole, no reasonable jury could find that the stated reason was false or that age discrimination was the true reason motivating Briggs's decision to terminate Wells's employment.

**D.     ADA Claim**

The ADA prohibits employment discrimination against "a qualified individual with a disability because of the disability of such individual." 42 U.S.C. § 12112(a).[3] To establish a *prima facie* case of employment discrimination based upon a disability, a plaintiff must show:  (1) that he was a qualified individual with a disability; (2) that he was discharged; (3) that he was fulfilling his employer's legitimate expectations at the time of discharge; and (4) that the circumstances of his discharge raise a reasonable inference of unlawful discrimination.  See Rohan v. Networks Presentations LLC, 375 F.3d 266, 272 n.9 (4th Cir. 2004); Haulbrook v. Michelin N. Am., 252 F.3d 696 (4th Cir. 2001).

For the same reasons discussed above, Wells cannot make the necessary showing that he was meeting his employer's legitimate expectations at the time of his termination; nor can he show that Briggs's stated reason for terminating him was pretextual.  Briggs is therefore entitled to summary judgment on Wells's disability discrimination claim for the same reasons it is entitled to summary judgment on his age discrimination claim.

Moreover, Briggs is also entitled to summary judgment on Wells's disability discrimination claim because Wells cannot establish the first prong of the *prima facie* case under the ADA—that he was a qualified individual with a disability.  First, Wells cannot show that he meets the statutory

---

[3] This action predates the effective date of the 2008 amendments to the ADA; thus, the earlier version of the statute applies. Accordingly, all references to the ADA statutes in this Report and Recommendation are to the statutes as they existed prior to the 2008 amendments.

*PJG*

definition of "qualified individual with a disability." 42 U.S.C. § 12111(8). Under the ADA, "qualified individual with a disability" means "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). Again, because Wells cannot show that he was meeting Briggs's conditions of employment that he generate a required amount of monthly revenue and make a minimum of forty sales calls per week, he cannot satisfy this element.

Second, under the ADA, a "disability" includes:

(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual;
(B) a record of such an impairment; or
(C) being regarded as having such an impairment.

42 U.S.C. § 12102(1). Here, Wells does not assert that he suffers from an actual disability or that he has a record of one; rather, he argues that Briggs regarded him as having a disability based on his knee surgery. See 42 U.S.C. § 12102(2)(C). No evidence supports this. See Haulbrook, 252 F.3d at 703 ("An individual is regarded as being disabled if he is regarded or perceived, albeit erroneously, as having an impairment that substantially limits one or more of his major life activities."). In fact, the only evidence in the record shows that Cobb was very familiar with the recovery period for knee replacement surgery and that Wells's impairment resulting from that surgery would be temporary. (Cobb Dep. 72-73, Docket Entry 20-1 at 20-21); Pollard v. High's of Baltimore, Inc., 281 F.3d 462, 471 (4th Cir. 2002) (holding that a "regarded as" claim failed as a matter of law when the employer correctly anticipated that the impairment would be temporary).

E.  **Retaliation Claim**

Wells's retaliation claim also fails for two reasons. First, he failed to exhaust administrative remedies with regard to any claim of retaliation. In the employment discrimination context, courts

have interpreted statutory requirements to exhaust administrative remedies to mean that each discrete incident of discriminatory treatment must be administratively exhausted. Martinez v. Potter, 347 F.3d 1208, 1210 (10th Cir. 2003) (citing Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 122 (2002)); Jones v. U.P.S., Inc., 502 F.3d 1176, 1186 (10th Cir. 2007). The allegations contained in the administrative charge of discrimination generally limit the scope of any subsequent judicial complaint. King v. Seaboard Coast Line R.R., 538 F.2d 581, 583 (4th Cir. 1976) (stating that a subsequent civil suit "may encompass only the 'discrimination stated in the [EEOC] charge itself or developed in the course of a reasonable investigation of that charge'") (quoting Equal Employment Opportunity Comm'n v. Gen. Elec. Co., 532 F.2d 359, 365 (4th Cir. 1976)); see also Smith v. First Union Nat'l Bank, 202 F.3d 234, 247 (4th Cir. 2000) ("A plaintiff's EEOC charge defines the scope of her subsequent right to institute a civil suit."). Only those claims stated in the initial administrative charge, those reasonably related to the original complaint, and those developed by reasonable investigation of the original complaint may be maintained in a subsequent lawsuit. Evans v. Technologies Applications & Serv. Co., 80 F.3d 954, 963 (4th Cir. 1996) (affirming the district court's dismissal of some of the plaintiff's claims because they were outside the scope of her original EEOC charge and were therefore time barred).

The Fourth Circuit has emphasized:

> The filing of an administrative charge is not simply a formality to be rushed through so that an individual can quickly file his subsequent . . . lawsuit. Rather, Congress intended the exhaustion requirement to serve the primary purposes of notice and conciliation. First, an administrative charge notifies the employer of the alleged discrimination. This notice gives the employer an initial opportunity to voluntarily and independently investigate and resolve the alleged discriminatory actions. It also prevents the employer from later complaining of prejudice, since it has known of the allegations from the very beginning. Second, the exhaustion requirement initiates agency-monitored settlement, the primary way that claims of discrimination are resolved.

Chacko v. Patuxent Inst., 429 F.3d 505, 510 (4th Cir. 2005) (citations omitted). "Allowing a complaint to encompass allegations outside the ambit of the predicate EEOC charge would circumscribe the EEOC's investigatory and conciliatory role, as well as deprive the charged party of notice of the charge, as surely as would an initial failure to file a timely EEOC charge." Dorsey v. Pinnacle Automation Co., 278 F.3d 830, 838 (8th Cir. 2002) (internal quotation marks and citations omitted). Therefore, a discrimination suit "is limited to discrimination charged in the report to the EEOC or to discrimination actually found by the EEOC upon investigation of the original charge." Stehle v. Gen. Mills Rest., Inc., 875 F. Supp. 320, 323 (D.S.C. 1994) (Title VII). When a discrimination claim "exceed[s] the scope of the EEOC charge and any charge that would naturally have arisen from an investigation thereof," it is procedurally barred. Dennis v. County of Fairfax, 55 F.3d 151, 156 (4th Cir. 1995) (Title VII).

Wells has failed to exhaust administrative remedies with regard to his claim of retaliation. Courts have specifically held that when a claim of retaliation could have been raised in the original EEOC charge, such a claim must be administratively exhausted or it is procedurally barred. See Riley v. Tech. & Mgmt. Servs. Corp., Inc., 872 F. Supp. 1454, 1459-60 (D. Md. 1995), aff'd, 79 F.3d 1141 (4th Cir. 1996) (finding that where an act of retaliation occurred prior to the filing of the EEOC charge and the plaintiffs failed to check the "retaliation" box, the retaliation claims were not administratively exhausted); see also McMillan v. S.C. Dep't of Corr., 16 F. Supp. 2d 635, 646 (D.S.C. 1997) (holding that where a charging party could have raised allegations of retaliation at the time she filed her charge, exhaustion of administrative remedies with respect to that charge is required), aff'd, 153 F.3d 721 (4th Cir. 1998). In fact, the United States Court of Appeals for the Fourth Circuit has found that where a plaintiff fails to check the "retaliation" box on the EEOC form and the narrative portion of the charge makes no mention of retaliation, such a claim should be

*PJG*

dismissed for failure to exhaust administrative remedies. See Miles v. Dell, Inc., 429 F.3d 480, 492 (4th Cir. 2005); see also Davenport v. Wal-Mart Stores East, L.P., C/A 3:08cv119, 2008 WL 1984259 (E.D. Va. May 6, 2008) (unpublished) (finding that the plaintiff's retaliation claim was unexhausted where the plaintiff failed to check the "retaliation" box and failed to allege retaliation anywhere in her EEOC charge).

Here, Wells, like the plaintiffs in many of the cases cited above, did not check the "retaliation" box on his EEOC Charge and made no allegation of retaliation in the narrative section. Although Wells contends that his narrative section includes a retaliation claim, the language upon which he relies states as follows: "In August, I was told I would need surgery. I advised Respondent who agreed to the surgery and rehab. I believe Respondent saw an opportunity to get rid of an older, higher paid employee who they now perceived to have a disability." (Pl.'s Dep. Ex. 14, Docket Entry 28-3 at 22.) This language, however, contains no allegations that would indicate to Briggs or the EEOC that Wells had suffered *retaliation*, as opposed to or in addition to age or disability *discrimination*. Accordingly, he has not administratively exhausted this claim.

For the same reason, even if this narrative sufficed to exhaust a claim of retaliation, such a claim would fail as a matter of law based on Wells's allegations. The allegations purportedly supporting a retaliation claim are merely duplicative of his discrimination claim rather than being based upon any facts showing that Wells engaged in protected activity within the meaning of the applicable statutes. To establish a *prima facie* case of retaliation, a plaintiff must show, among other things, that he engaged in protected activity. See Laber v. Harvey, 438 F.3d 404 (4th Cir. 2006) (ADEA retaliation); Freilich v. Upper Chesapeake Health, Inc., 313 F.3d 205 (4th Cir. 2002) (ADA retaliation). A plaintiff engages in protected activity within the meaning of the statute in one of two ways: he either opposes an unlawful employment practice or he participates in an investigation,

proceeding, or hearing regarding such. See 29 U.S.C. § 623(d); Crawford v. Metro. Gov't of Nashville & Davidson County, 129 S. Ct. 846, 850-51 (2009) (interpreting the corresponding Title VII clause). Here, Wells alleges no facts showing that he has engaged in protected opposition or participation activity. His claim that he was "retaliated" against for having knee surgery simply restates his claim of discrimination. Accordingly, it must fail.

## RECOMMENDATION

Wells cannot demonstrate that he was meeting Briggs's legitimate expectations at the time of his discharge. Nor has he introduced evidence from which a reasonable jury could find that Briggs's proffered reason for his termination was pretextual. Further, the claim he characterizes as "retaliation" is duplicative to his disability discrimination claim and, even if were not, it is unexhausted. Accordingly, the court recommends that the defendant's motion for summary judgment ([Docket Entry 20](Docket Entry 20)) be granted.

_____
Paige J. Gossett
UNITED STATES MAGISTRATE JUDGE

May 12, 2010
Columbia, South Carolina

*The parties' attention is directed to the important notice on the next page.*

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); see Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> Larry W. Propes, Clerk
> United States District Court
> 901 Richland Street
> Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).